# EXHIBIT 5

AUCTION NOTICE

**Murray Energy Corporation**
**46226 National Road**
**St. Clairsville, Ohio 43950**

Goldman Sachs Lending Partners LLC, as Auction Manager
200 West Street
New York, New York 10282
Attention: Douglas Tansey
Fax No.: 212-902-3000
Email: Douglas.tansey@gs.com

Re: Loan Auction

Ladies and Gentlemen:

Reference is made to (a) that certain Credit and Guaranty Agreement, dated as of April 16, 2015 (as amended from time to time, the "**Credit Agreement**"), by and among **MURRAY ENERGY CORPORATION**, an Ohio corporation ("**Borrower**"), **MURRAY ENERGY HOLDINGS CO.**, a Delaware corporation, certain subsidiaries of Borrower, as guarantors, the lenders party thereto from time to time (the "**Lenders**"), **DEUTSCHE BANK AG NEW YORK BRANCH**, as retiring administrative agent, **GLAS TRUST COMPANY LLC,** as successor administrative agent, and the other agents named therein, (b) the proposed Waiver, Consent and Amendment No. 3 to Credit and Guaranty Agreement posted concurrently herewith (the "**Amendment**") and (c) the proposed Superpriority Credit and Guaranty Agreement posted concurrently herewith (the "**Superpriority Credit Agreement**").  Capitalized terms used but not defined herein have the meanings given to such terms in the Credit Agreement.

Borrower hereby gives notice to the Lenders that it desires to conduct the following Auction:

- Auction Amount:

  o The entire principal amount of Term B-2 Loans of each Lender participating in the Auction to be  purchased by the Borrower for the same principal amount of the Superpriority Term B-2 Loans deemed borrowed by the Borrower and outstanding under (and as defined in) the Superpriority Credit Agreement; and

  o The entire principal amount of Term B-3 Loans of each Lender participating in the Auction to be purchased by the Borrower for the same principal amount of the Superpriority Term B-3 Loans deemed borrowed by the Borrower and outstanding under (and as defined in) the Superpriority Credit Agreement.

- Discount Range:  Not less than $1,000 nor greater than $1,000 per $1,000 principal amount of Term B-2 Loans, and not less than $1,000 nor greater than $1,000 per $1,000 principal amount of Term B-3 Loans.

Rollover Option

- **Lenders desiring to participate in the Auction (by submitting a Return Bid and by way of a rollover transaction) and consent to the Amendment and become a party to the Superpriority Credit Agreement are instructed to complete and execute the**

1

**attached Lender Consent (Rollover Option) by no later than 5.00 p.m. (New York City time) on June 14, 2018.**

- **Please provide an electronic copy of your institution's executed Lender Consent (Rollover Option) signature page to LendAmend (MurrayJune18@Lendamend.com) by the time specified above and contact Gloria M. Shye of LendAmend at +1 (646) 453-2847 or gloria.shye@fisglobal.com with any questions regarding signature pages.**

- **Please also submit a completed administrative detail form attached to this Auction Notice to clientservices@glas.agency by no later than 5:00 p.m. (New York City time) on June 14, 2018.**

<u>Assignment Settlement Option</u>

- **Lenders desiring to participate in the Auction (by way of an assignment settlement option) and assign their Term B-2 Loans and Term B-3 Loans, as applicable, to the Specified Lender under (and as defined in) the Amendment and agree to purchase and assume a like principal amount of Superpriority Term Loans from the Specified Lender are instructed to complete and execute the attached Lender Consent (Assignment Settlement Option) by no later than 5:00 p.m. (New York City time) on June 14, 2018.**

- **Please provide an electronic copy of your institution's executed Lender Consent (Assignment Settlement Option) signature pages to LendAmend (MurrayJune18@Lendamend.com) by the time specified above and contact Gloria M. Shye of LendAmend at +1 (646) 453-2847 or gloria.shye@fisglobal.com with any questions regarding signature pages.**

- **Please also submit a completed administrative questionnaire attached to this Auction Notice to clientservices@glas.agency by no later than 5:00 p.m. (New York City time) on June 14, 2018.**

<u>Non-Participating Lenders</u>

- Any Lender who does not wish to participate in the Auction does not need to submit a Lender Consent (Rollover Option) or a Lender Consent (Assignment Settlement Option) since if you fail to complete and sign the attached Lender Consent (Rollover Option) or Lender Consent (Assignment Settlement Option) by the time specified above, you will be deemed not to have consented to the Amendment and declined to participate in the Auction.  Your Term B-2 Loans and Term B-3 Loans, as applicable, will continue to remain outstanding under the Credit Agreement subject to the term and conditions thereof (as amended by the Amendment if the Amendment becomes effective).

- **Any Lender who does not wish to participate, however, should submit a completed administrative questionnaire attached to this Auction Notice to clientservices@glas.agency.**

US-DOCS\101253521.9

Borrower acknowledges that this Auction Notice may not be withdrawn other than by reason of the Amendment not becoming effective in accordance with its terms on or prior to June 29, 2018. The Auction shall be consummated on the Effective Date (as defined in the Amendment), with all Lender Consent (Rollover Option) or a Lender Consent (Assignment Settlement Option) due no later than 5:00 p.m. (New York time) on June 14, 2018.

Borrower hereby represents and warrants that (i) no Default or Event of Default has occurred and is continuing or would result from such repurchase and (ii) Borrower will not use the proceeds of any loans under the Revolving Credit Agreement to acquire such Term B-2 Loans or Term B-3 Loans. Borrower is not making any representation that it is not in possession of any information regarding Borrower, its Subsidiaries or its Affiliates, or their assets, Borrower's ability to perform its Obligations or any other matter that may be material to a decision by any Lender to participate in any Auction or enter into any Affiliate Assignment Agreement or any of the transactions contemplated thereby.

The Borrower confirms that the Retiring Administrative Agent (defined in the Amendment) and the Successor Administrative Agent (defined in the Amendment) make no representations or warranties with respect to the accuracy or completeness of this Auction Notice and express no opinions whatsoever as to the merits of the proposals as presented to Lenders in this Auction Notice. This Auction Notice is being delivered to Lenders solely at the instigation of the Borrower without the prior approval or consent of the Retiring Administrative Agent and Successor Administrative Agent. The Retiring Administrative Agent and Successor Administrative Agent therefore make no assessment of the impact of the proposals as presented to Lenders, either as a class or as individuals.

Very truly yours,

MURRAY ENERGY CORPORATION

By: _____

Name:  Robert D. Moore
Title:   Exec. V.P., C.O.O., & C.F.O.



**JANUARY 2005**

<div style="border:1px solid black; text-align:center;">

**Agent Logo**

</div>

# ADMINISTRATIVE QUESTIONNAIRE

## BORROWER

Agent Address: _____   Return form to: _____

_____   Telephone: _____

_____   Facsimile: _____

_____   E-mail: _____

---

It is very important that **all** of the requested information be completed accurately and that this questionnaire be returned promptly. If your institution is sub-allocating its allocation, please fill out an administrative questionnaire for each legal entity.

---

Legal Name of Lender to appear in Documentation:

_____

Signature Block Information: _____

- Signing Credit Agreement ☐ Yes ☐ No
- Coming in via Assignment ☐ Yes ☐ No

Type of Lender: _____

(Bank, Asset Manager, Broker/Dealer, CLO/CDO; Finance Company, Hedge Fund, Insurance, Mutual Fund, Pension Fund, Other Regulated Investment Fund, Special Purpose Vehicle, Other- please specify)

Lender Parent: _____

<u>Domestic Address</u>                    <u>Eurodollar Address</u>

_____        _____

_____        _____

_____        _____

Copyright © LSTA 2005. All rights reserved.

**Contacts/Notification Methods:  Borrowings, Paydowns, Interest, Fees, etc.**

Primary Credit Contact                            Secondary Credit Contact

Name:            _____            _____

Company:         _____            _____

Title:           _____            _____

Address:         _____            _____

                 _____            _____

Telephone:       _____            _____

Facsimile:       _____            _____

E-Mail Address:  _____            _____


Primary Operations Contact                        Secondary Operations Contact

Name:            _____            _____

Company:         _____            _____

Title:           _____            _____

Address:         _____            _____

                 _____            _____

Telephone:       _____            _____

Facsimile:       _____            _____

E-Mail Address:  _____            _____


Bid Contact                                       L/C Contact

Name:            _____            _____

Company:         _____            _____

Title:           _____            _____

Address:         _____            _____

                 _____            _____

Telephone:       _____            _____

Facsimile:       _____            _____

E-Mail Address:  _____            _____

## Lender's Domestic Wire Instructions

Bank Name: _____

ABA/Routing No.: _____

Account Name: _____

Account No.: _____

FFC Account Name: _____

FFC Account No.: _____

Attention: _____

Reference: _____

## Lender's Foreign Wire Instructions

Currency: _____

Bank Name: _____

Swift/Routing No.: _____

Account Name: _____

Account No.: _____

FFC Account Name: _____

FFC Account No.: _____

Attention: _____

Reference: _____

## Agent's Wire Instructions

Bank Name: _____

ABA/Routing No.: _____

Account Name: _____

Account No.: _____

FFC Account Name: _____

FFC Account No.: _____

Attention: _____

Reference: _____

**Tax Documents**

## NON-U.S. LENDER INSTITUTIONS:

### I. *Corporations*:

If your institution is incorporated outside of the United States for U.S. federal income tax purposes, and is the beneficial owner of the interest and other income it receives, you must complete one of the following three tax forms, as applicable to your institution: *a.) Form W-8BEN* (*Certificate of Foreign Status of Beneficial Owner*), *b.) Form W-8ECI* (*Income Effectively Connected to a U.S. Trade or Business*), or *c.) Form W-8EXP* (*Certificate of Foreign Government or Governmental Agency*).

A U.S. taxpayer identification number is required for any institution submitting Form W-8ECI. It is also required on Form W-8BEN for certain institutions claiming the benefits of a tax treaty with the U.S. Please refer to the instructions when completing the form applicable to your institution. In addition, please be advised that U.S. tax regulations do not permit the acceptance of faxed forms. **An original tax form must be submitted.**

### II. *Flow-Through Entities*:

If your institution is organized outside the U.S., and is classified for U.S. federal income tax purposes as either a Partnership, Trust, Qualified or Non-Qualified Intermediary, or other non-
U.S. flow-through entity, an original *Form W-8IMY* (*Certificate of Foreign Intermediary, Foreign Flow-Through Entity, or Certain U.S. Branches for United States Tax Withholding*) must be completed by the intermediary together with a withholding statement. Flow-through entities other than Qualified Intermediaries are required to include tax forms for each of the underlying beneficial owners.

Please refer to the instructions when completing this form.   In addition, please be advised that
U.S. tax regulations do not permit the acceptance of faxed forms. **Original tax form(s) must be submitted.**

## U.S. LENDER INSTITUTIONS:

If your institution is incorporated or organized within the United States, you must complete and return *Form W-9 (Request for Taxpayer Identification Number and Certification).* **Please be advised that we request that you submit an original Form W-9.**

***Pursuant to the language contained in the tax section of the Credit Agreement, the applicable tax form for your institution must be completed and returned prior to the first payment of income. Failure to provide the proper tax form when requested may subject your institution  to U.S. tax withholding.***

## RETURN BID

Goldman Sachs Lending Partners LLC, as Auction Manager
200 West Street
New York, New York 10282
Attention: Douglas Tansey
Fax No.:  212-902-3000
Email:  Douglas.tansey@gs.com

Ladies and Gentlemen:

Reference is made to that certain Credit and Guaranty Agreement, dated as of April 16, 2015 (as amended from time to time, the "**Credit Agreement**"), by and among **MURRAY ENERGY CORPORATION**, an Ohio corporation ("**Borrower**"), **MURRAY ENERGY HOLDINGS CO.**, a Delaware corporation, certain subsidiaries of Borrower, as guarantors, the lenders party thereto from time to time (the "**Lenders**"), **DEUTSCHE BANK AG NEW YORK BRANCH**, as retiring administrative agent, **GLAS TRUST COMPANY LLC,** as successor administrative agent, and the other agents named therein.   Capitalized terms used but not defined herein have the meanings given to such terms in the Credit Agreement or in the related Auction Notice, as applicable.

The undersigned Lender hereby gives notice of its participation in the Auction by submitting the following Return Bid:

| Reply Price (price per $1,000) | Reply Amount (principal amount of Term Loans) |
|---|---|
| US$1,000 of the principal amount of the Superpriority Term B-2 Loan and/or Superpriority Term B-3 Loan, as applicable, deemed borrowed by the Borrower and outstanding under the Superpriority Credit Agreement (as each such term is defined in the Auction Notice) | The entire principal amount of the undersigned Lender's Term B-2 Loan and/or The entire the principal amount of the undersigned Lender's Term B-3 Loan, as applicable |

The undersigned Lender acknowledges that the submission of Return Bid, along with an executed Affiliate Assignment Agreement and Lender Consent (Rollover Option), to be held in escrow by the Auction Manager, obligates the Lender to sell the entirety of the Reply Amount for the same principal amount of the Superpriority Term B-2 Loans and/or the Superpriority Term B-3 Loans, as applicable, deemed borrowed by the Borrower and outstanding under (and as defined in) the Superpriority Credit Agreement.

Very truly yours,

[Name of Lender]

By: _____
       Name:
       Title:

[Signature Page to the Return Bid]

## AFFILIATE ASSIGNMENT AND ASSUMPTION AGREEMENT

This Affiliate Assignment and Assumption Agreement (this "**Assignment**") is dated as of the Affiliate Assignment Effective Date set forth below and is entered into by and between each of the undersigned identified on the signature pages hereto as "Assignors" (each, an "**Assignor**") and Murray Energy Corporation, an Ohio Company (the "**Assignee**").  Capitalized terms used but not defined herein shall have the meanings given to them in the Credit Agreement identified below (as it may be amended, supplemented or otherwise modified from time to time, the "**Credit Agreement**"), receipt of a copy of which is hereby acknowledged by the Assignee.  The Standard Terms and Conditions set forth in Annex 1 attached hereto (the "**Standard Terms and Conditions**") are hereby agreed to and incorporated herein by reference and made a part of this Assignment as if set forth herein in full.

For an agreed consideration, each Assignor hereby irrevocably sells and assigns to the Assignee, and the Assignee hereby irrevocably purchases and assumes from each Assignor, subject to and in accordance with the Standard Terms and Conditions and the Credit Agreement, as of the Affiliate Assignment Effective Date inserted by the Auction Manager as contemplated in the related Auction Notice, (i) all of the Assignor's rights and obligations in its capacity as a Lender under the Credit Agreement and any other documents or instruments delivered pursuant thereto to the extent related to the amount and percentage interest identified below of all of such Assignor's outstanding rights and obligations under the respective facilities identified below (including without limitation guarantees included in such facilities), and (ii) to the extent permitted to be assigned under applicable law, all claims, suits, causes of action and any other right of such Assignor (in its capacity as a Lender) against any Person, whether known or unknown, arising under or in connection with the Credit Agreement, any other documents or instruments delivered pursuant thereto or the loan transactions governed thereby or in any way based on or related to any of the foregoing, including, but not limited to, contract claims, tort claims, malpractice claims, statutory claims and all other claims at law or in equity related to the rights and obligations sold and assigned pursuant to clause (i) above (the rights and obligations sold and assigned by each Assignor to the Assignee pursuant to clauses (i) and (ii) above being referred to herein collectively as the "**Assigned Interest**").  Such sale and assignment is without recourse to the Assignor and, except as expressly provided in this Assignment and the Credit Agreement, without representation or warranty by such Assignor.

1.      Markit Entity Identifier (if any):    _____

3.      Borrower:      **MURRAY ENERGY CORPORATION**

4.      Administrative Agent:      **DEUTSCHE BANK AG NEW YORK BRANCH**, as the retiring administrative agent, and **GLAS TRUST COMPANY LLC,** as successor administrative agent

5.      Credit Agreement:      The Credit and Guaranty Agreement, dated as of April 16, 2015, by and among **MURRAY ENERGY CORPORATION**, an Ohio corporation ("**Borrower**"), **MURRAY ENERGY HOLDINGS CO.**, a Delaware corporation, certain subsidiaries of Borrower, as guarantors, the lenders party thereto from time to time, **DEUTSCHE BANK AG NEW YORK BRANCH**, as retiring administrative agent, **GLAS TRUST COMPANY LLC**, as successor administrative agent, and the other agents named therein.

6.      Assignor's Interest under the Credit Agreement:

| Facility | Aggregate Principal Face Amount of Term Loans of Assignor |
|---|---|
| Term B-2 Loans and Term B-3 Loans | The entire principal amount of Assignor's Term B-2 Loans and/or the entire principal amount of |

1

| | Assignor's Term B-3 Loans, as applicable |
|---|---|

7.      Assigned Interest:

List below the Term Loans to be assigned by Assignor to Assignee, which shall be subject to the terms and conditions of the Auction.

| Reply Price with respect to Term B-2 Loans and/or Term B-3  being offered for assignment to Assignee (price per $1,000 principal amount) | Reply Amount (principal face amount of Term Loans to be Assigned to Assignee at relevant Reply Price) (subject to pro rata reduction) |
|---|---|
| US$1,000 of the principal amount of the Superpriority Term B-2 Loan and/or Superpriority Term B-3 Loan, as applicable, deemed borrowed by the Borrower and outstanding under the Superpriority Credit Agreement (as each such term is defined in the Auction Notice) | The entire principal amount of Assignor's Term B-2 Loans and/or the entire principal amount of Assignor's Term B-3 Loans, as applicable |

8.      Affiliate Assignment Effective Date: _____, 2018   TO BE INSERTED BY AUCTION MANAGER AND WHICH SHALL BE THE AFFILIATE ASSIGNMENT EFFECTIVE DATE OF RECORDATION OF TRANSFER IN THE REGISTER THEREFOR.

2

Each Assignor acknowledges and agrees that (i) submission of a Return Bid in respect of the Term B-2 Loans and/or Term B-3 Loans, as applicable, will constitute a binding agreement between each Assignor and the Assignee in accordance with the terms and conditions of the Auction Notice, the Amendment referenced in the Auction Notice and the Credit Agreement; (ii) each Assignor's Term B-2 Loans and/or Term B-3 Loans, as applicable, will be deemed to have been accepted by the Assignee to the extent such Term B-2 Loans and/or Term B-3 Loans, as applicable, are validly offered by the Assignors to Assignee in accordance with the terms and conditions of the Auction Notice, the Amendment referenced in the Auction Notice and the Credit Agreement on the date  such Auction has been consummated as of the Effective Date (as defined in the Amendment); and (iii) it does not have any withdrawal rights with respect to any offer to assign its Term B-2 Loans and/or Term B-3 Loans, as applicable.

Subject to and effective upon the acceptance by the Assignee for purchase of the principal amount of the Term B-2 Loans and Term B-3 Loans, as applicable, to be assigned by the Assignors to the Assignee, each Assignor hereby irrevocably constitutes and appoints the Auction Manager as the true and lawful agent and attorney-in-fact of the Assignor with respect to such Term B-2 Loans and Term B-3 Loans, with full powers of substitution and revocation (such power of attorney being deemed to be an irrevocable power coupled with an interest) to complete or fill-in the blanks in this Assignment and deliver the completed Assignment to the Assignee and the Assignor.

*[Signature page follows]*

Each Assignor acknowledges and agrees that its offer to assign Term B-2 Loans and/or Term B-3 Loans, as applicable, pursuant to the Auction Notice constitutes such Assignor's acceptance of the terms and conditions contained in the Auction Notice, the Amendment referenced in the Auction Notice, the Credit Agreement and this Assignment.

The terms set forth in this Assignment are hereby agreed to:

4

ASSIGNOR

**[NAME OF ASSIGNOR]**

By:_____
Name:
Title:

[Signature Page to Affiliate Assignment and Assumption Agreement]

ASSIGNEE

**MURRAY ENERGY CORPORATION**


By:_____
Name:
Title:


Accepted:

**GLAS TRUST COMPANY LLC**, as Administrative Agent


By:_____
Name: _____
Title: Authorized Signatory


**GOLDMAN SACHS LENDING PARTNERS LLC]**, as Auction Manager


By:_____
Name:_____
Title: Authorized Signatory


[Signature Page to Affiliate Assignment and Assumption Agreement]

ANNEX 1

STANDARD TERMS AND CONDITIONS FOR AFFILIATE
ASSIGNMENT AND ACCEPTANCE

1.  Representations and Warranties.

1.1  Assignor.  Each Assignor (a) represents and warrants that (i) it is the legal and beneficial owner of the Assigned Interest, (ii) the Assigned Interest is, and on the applicable Affiliate Assignment Effective Date will be, free and clear of any lien, encumbrance or other adverse claim, (iii) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and to consummate the transactions contemplated hereby, (iv) it has received a copy of the Credit Agreement and such other documents and information as it has deemed appropriate to make its own decision to enter into this Assignment and to sell and assign the Assigned Interest on the basis of which it has made such decision, and (v) it is not a Defaulting Lender; (b) assumes no responsibility with respect to (i) any statements, warranties or representations made in or in connection with any Credit Document, (ii) the execution, legality, validity, enforceability, genuineness, sufficiency or value of the Credit Agreement or any other instrument or document delivered pursuant thereto, other than this Assignment (herein collectively the "**Credit Documents**"), or any collateral thereunder, (iii) the financial condition of Borrower, any of its Subsidiaries or Affiliates or any other Person obligated in respect of any Credit Document or (iv) the performance or observance by Borrower, any of its Subsidiaries or Affiliates or any other Person of any of their respective obligations under any Credit Document, and (c) has read and agrees to all of the terms and conditions (including the pro ration procedures) of the Auction Procedures set forth in the Offer Documents.  Each Assignor will, upon request, execute and deliver any additional documents deemed by Administrative Agent[1], the Auction Manger or the Assignee to be necessary or desirable to complete the sale, assignment and transfer of the Assigned Interest.  In the event that any Assignor has determined for itself to not access any information disclosed by Assignee in connection with the Auction or this Assignment, the Assignor acknowledges that (i) other Lenders may have availed themselves of such information and (ii) none of Borrower, the Auction Manager, nor Administrative Agent has any responsibility for such Assignor's decision to limit the scope of the information it has obtained in connection with its evaluation of the Auction or its decision to enter into this Assignment.

1.2  Assignee.  The Assignee  represents and warrants that (i) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and to consummate the transactions contemplated hereby and to become a Lender under the Credit Agreement until such time as the Loans are automatically cancelled without further action by any Person on the Affiliate Assignment Effective Date and (ii) it acknowledges that the Assigned Interest shall, from and after the Affiliate Assignment Effective Date, and without further action by any Person, be deemed cancelled for all purposes and no longer outstanding and that the Assignee shall have no ability to vote or receive payments in respect of the Assigned Interest.

1.3  No Violation of Laws.  Each of the Assignors and Assignee acknowledges that it has not violated any applicable laws relating to this Assignment or the transactions contemplated herein.

---

[1] For the avoidance of doubt, each reference to Administrative Agent in these terms and conditions shall include GLAS TRUST COMPANY LLC, as successor Administrative Agent.

2.      <u>Payments</u>.  Payment to the Assignor by each Assignee in respect of the settlement of the assignment of the Assigned Interest shall be paid by Assignee by a deemed borrowing by Assignee of the Superpriority Term B-2 Loan and Superpriority Term B-3 Loan under the Superpriority Credit Agreement (as each such term is defined in the Auction Notice) in the same principal amount of the Term B-2 Loan and Term B-3 Loan, as applicable, purchased and assumed by Assignee from the Assignors under this Assignment.

3.      <u>No Default</u>.  On the Affiliate Assignment Effective Date, no Default or Event of Default has occurred and is continuing or would result from this Assignment.

4.      <u>General Provisions</u>.  This Assignment shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns.  This Assignment may be executed in counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement.  Delivery of an executed counterpart of a signature page of this Assignment by facsimile or in electronic format (i.e., "pdf" or "tif") shall be effective as delivery of a manually executed counterpart of this Assignment.  This Assignment shall be governed by, and shall be construed and enforced in accordance with, the laws of the State of New York without regard to conflict of laws principles thereof that would require the application of any law other than the law of the State of New York. Sections 10.16 and 10.17 of the Credit Agreement are hereby incorporated herein as if fully set forth herein.

## LENDER CONSENT (ROLLOVER OPTION)

Reference is made to (i) the proposed Waiver, Consent and Amendment No. 3 to Credit and Guaranty Agreement (the "Amendment") to be entered into by and among Murray Energy Corporation (the "Borrower"), each of the Credit Parties party thereto, each Consenting Term B Lender (as defined therein), Deutsche Bank AG New York Branch, as Retiring Administrative Agent (as defined therein), and GLAS TRUST COMPANY LLC as Successor Administrative Agent (as defined therein) and (ii) the proposed Superpriority Credit and Guaranty Agreement posted concurrently with the Auction Notice to which this Lender Consent (Rollover Option) is attached (the "Superpriority Credit Agreement"). Unless otherwise defined herein, terms defined in the Amendment and used herein shall have the meanings given to them in the Amendment.

The undersigned Lender hereby elects to (i) consent and agree to the Amendment and the Superpriority Credit Agreement and (ii) participate in the Auction described in the Auction Notice by submitting a Return Bid referenced therein. The undersigned agrees:

(A) (i) that the Retiring Administrative Agent and the Successor Administrative Agent are each hereby authorized and directed to enter into the Amendment and any other documents or agreements to give effect to the Amendment, (ii) to be a party to the Amendment as a Consenting Term B Lender, (iii) that its appropriate executed signature page hereto shall be attached to the Amendment, (iv) that its appropriate executed signature page hereto shall be attached to the Return Bid, (v) that its appropriate executed signature page hereto shall be attached to the Affiliate Assignment Agreement referenced in the Auction Notice and (vi) to waive any compensation that may be owing to the undersigned pursuant to Section 2.18(c) of the Credit Agreement on account of the cancellation of undersigned's Term B-2 Loans and/or Term B-3 Loans, as applicable, purchased in the Auction; and

(B) (i) that GLAS TRUST COMPANY LLC in its capacity as the Administrative Agent under (and as defined in) the Superpriority Credit Agreement is hereby authorized and directed to enter into the Superpriority Credit Agreement and any other documents or agreements to give effect to the Superpriority Credit Agreement and to complete the amount of the undersigned's Superpriority Term B-2 Loan and/or Superpriority Term B-3 Loan, as applicable, in the schedules to the Superpriority Credit Agreement, (ii) to be a party as a lender to the Superpriority Credit Agreement, and (iii) that its appropriate executed signature page hereto shall be attached to the Superpriority Credit Agreement.

**Note that such Lender must execute all four signature pages.**

THIS LENDER CONSENT (ROLLOVER OPTION) SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.

Delivery of an executed signature page hereof by facsimile or other electronic transmission (including .pdf or .tif format) shall be effective as delivery of a manually executed counterpart hereof.

[NAME OF LENDER]

By    _____
Name:
Title:

Very truly yours,

[Name of Lender]

By: _____
        Name:
        Title:

[Signature Page to the Return Bid]

ASSIGNOR

**[NAME OF ASSIGNOR]**

By:_____

Name:

Title:

[Signature Page to Affiliate Assignment and Assumption Agreement]

[NAME OF LENDER]

By    _____
Name:
Title:

## LENDER CONSENT (ASSIGNMENT SETTLEMENT OPTION)

Reference is made to (i) the proposed Waiver, Consent and Amendment No. 3 to Credit and Guaranty Agreement (the "Amendment") to be entered into by and among Murray Energy Corporation (the "Borrower"), each of the Credit Parties party thereto, each Consenting Term B Lender (as defined therein), Deutsche Bank AG New York Branch, as Retiring Administrative Agent (as defined therein), and GLAS TRUST COMPANY LLC as Successor Administrative Agent (as defined therein) and (ii) the proposed Superpriority Credit and Guaranty Agreement posted concurrently with the Auction Notice to which this Lender Consent (Assignment Settlement Option) is attached  (the "Superpriority Credit Agreement").  Unless otherwise defined herein, terms defined in the Amendment and used herein shall have the meanings given to them in the Amendment.

The undersigned assignor hereby elects to assign 100% of its existing Term B-2 Loan and Term B-3 Loan, as applicable, to the Specified Lender (the "Assigned Term B Loan Interest") and the undersigned assignee agrees to purchase and assume from the Specified Lender a like principal amount of the Superpriority Term B-2 Loans and Superpriority Term B-3 Loans, as applicable (the "Assigned Superpriority Term Loan Interest").

The undersigned assignor (i)  agrees to be a party to the Assignment Agreement under (and as defined in) the Credit Agreement pursuant to which it assigns the Assigned Term B Loan Interest to the Specified Lender, (ii) authorizes the Administrative Agent under (and as defined in) the Credit Agreement to complete such Assignment Agreement and consent to it, and (iii) agrees that its appropriate executed signature page hereto shall be attached to such Assignment Agreement.

The undersigned assignee (i)  agrees to be a party to the Assignment Agreement under (and as defined in) the Superpriority Credit  Agreement pursuant to which it purchases and assumes  the Assigned Superpriority Term Loan Interest from the Specified Lender to it, (ii) authorizes the Administrative Agent under (and as defined in) the Superpriority Credit Agreement to complete such Assignment Agreement and consent to it, and (iii) agrees that its appropriate executed signature page hereto shall be attached to such Assignment Agreement.

**Note that such Lender must execute both signature pages.**

THIS LENDER CONSENT (ASSIGNMENT SETTLEMENT OPTION) SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.

Delivery of an executed signature page hereof by facsimile or other electronic transmission (including .pdf or .tif format) shall be effective as delivery of a manually executed counterpart hereof.

**ASSIGNOR**

[NAME OF ASSIGNOR]


By    _____
Name:
Title:

**ASSIGNEE**
[NAME OF ASSIGNEE]


By      _____
Name:
Title: